UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JERRY KROKOS                                                                    PLAINTIFF

V.                                                        CIVIL ACTION NO. 3:05-CV-734 DPJ/JCS

BARBARA SMITH, CHANCELLOR DAN JONES,
PAUL TRUSSELL JR., JOE FILES, LACETT COLLINS,
ROXANNE HICKMAN, JEREMY RUDD, and
UNIVERSITY OF MISSISSIPPI MEDICAL CENTER                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on Defendants' Motion to Dismiss/Motion for Summary

Judgment.  Having considered the submissions of the parties and the applicable law, the Court

concludes that the motion should be granted with regard to Plaintiff's due process claim and that

the remaining claims should be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3)

(2000).

I.        **PROCEDURAL HISTORY/FACTS:**

Plaintiff Jerry Krokos asserts a claim under 42 U.S.C. § 1983 (2000) against the vice

chancellor and other employees of the University of Mississippi Medical Center ("UMMC")

alleging that he was deprived of a property interest in his employment without due process in

violation of the Fourteenth Amendment to the United States Constitution.  He also claims that

UMMC is liable for a breach of his employment contract and that three individuals – Roxanne

Hickman, Jeremy Rudd, and Lacett Collins – are liable in tort for malicious interference with his

employment contract.

Defendants argue that they are entitled to a judgment on the due process claim because

they afforded Plaintiff all of the process he was due in connection with the termination of his

employment and because they enjoy qualified immunity from the due process claim.  Because of

the Court's disposition of Plaintiff's Section 1983 claim, it is not necessary to address the

parties' arguments regarding the other claims.

The parties agree that Plaintiff was employed as an instructor at the School of Dentistry

at UMMC and had a written one-year employment contract that could not be terminated but for

certain enumerated reasons including "for cause."  They also agree that Plaintiff had a

Constitutionally protected property interest in his employment by virtue of that contract.

Similarly, there is no dispute that Plaintiff was suspended from his employment on October 15,

2004, and that on November 8, 2004, his employment was terminated effective as of  the date of

his suspension.[1]

The evidence shows, and Plaintiff does not dispute, that prior to the termination of his

employment at UMMC he had at least two meetings with Defendant Barbara Smith, an EEO

administrator at UMMC.  According to Ms. Smith's affidavit, those meetings were prompted by

complaints she received that Plaintiff was engaging in inappropriate and possibly harassing

behavior toward Roxanne Hickman, another UMMC employee.  During those meetings, Ms.

Smith explained the complaints that had been made about Plaintiff and allowed him an

opportunity to tell his side of the story.

Both Ms. Smith's affidavit and a transcript of the later hearing before a UMMC

committee show that Plaintiff acknowledged doing and saying most of the things about which

Ms. Hickman complained.  Plaintiff generally disputed the context in which some of the conduct

occurred and whether his words and actions should have been interpreted as harassing.  Through

---

[1]As to the remaining legally relevant facts, the Court must rely upon the Defendants' evidentiary
submissions, which include affidavits from certain Defendants, correspondence sent to Plaintiff, and a transcription
of the proceedings before a UMMC committee.  All of those evidentiary submissions pertain to facts about which
Plaintiff has at least equal, if not superior, knowledge without the benefit of discovery.

Ms. Smith's conversations with Plaintiff, and her investigation of the complaints against him, she also learned that both Ms. Hickman and her supervisor had made earlier complaints about Plaintiff and that Plaintiff's supervisor had, on three separate occasions, ordered him to stay out of Ms. Hickman's work area.

In October 2004, Ms. Smith received a detailed report from Paul Trussell, UMMC's Human Resources Director. That report prompted Ms. Smith to hold a meeting with Plaintiff on October 15. During that meeting she confronted Plaintiff with the complaints and gave him an opportunity to respond. At the conclusion of that meeting, and after hearing Plaintiff's side of the story, Ms. Smith advised Plaintiff that he was suspended without pay pending completion of her investigation.

On November 8, 2004, after investigating the complaints, Ms. Smith had another meeting with Plaintiff during which she gave him further opportunity to respond. Later on November 8, Ms. Smith sent a letter to Plaintiff advising him that his employment was terminated effective October 15, the date of the suspension. Ms. Smith's letter to Plaintiff was followed by letters from the chair of Plaintiff's department and the Dean of the School of Dentistry, Dr. James R. Hupp. In Dr. Hupp's letter to Plaintiff, he said, "After listening to your explanation and reviewing the facts that led up to your suspension and subsequent termination, I am of the opinion that there was sufficient cause to warrant the action taken."

After his termination, Plaintiff requested a hearing before UMMC's Academic Freedom and Faculty Responsibility Committee to review the termination decision. On January 31, 2005, Dr. Joe Files, chairman of that committee, wrote to Plaintiff and advised him of the time and location of the hearing as well as the procedure that would be followed. Among other things, Dr. Files wrote, "Barbara Smith from the Department of Human Resources will state their case *and*

*bring supporting faculty and/or employees.*  The Committee has the opportunity to ask them

questions."  (Emphasis added).  In that letter, Dr. Files also offered to meet with Plaintiff

personally and/or to answer Plaintiff's questions before the hearing.  The record contains no

evidence that Plaintiff took advantage of Dr. Files's offer.

In addition to Dr. Files, the committee was composed of six faculty members from

various schools and departments within UMMC.  Plaintiff attended the hearing accompanied by

two attorneys with whom he was allowed to consult.  Because Plaintiff said he was not "familiar

with exactly what the charges [were against him]," the chair allowed Plaintiff to defer his

presentation to the committee until after he had heard all of the evidence.  Besides herself, Ms.

Smith called four witnesses to testify about Plaintiff's conduct – three in person and one by tape

recording.

Ms. Smith addressed the complaints she received about Plaintiff,  what she learned from

others during her investigation, and her conversations with Plaintiff in which he confirmed many

of the factual allegations against him.  Ms. Hickman then described various contact she had with

Plaintiff that made her feel uncomfortable and/or intimidated.  Most of the conduct she described

occurred in her work area, but she also addressed an incident on an elevator in which Plaintiff

caused her to feel particularly intimidated.  Hickman further testified that she complained about

the Plaintiff's conduct to her supervisor.

Ms. Smith called two witnesses to corroborate Ms. Hickman's testimony.  Lori Rickman,

Ms. Hickman's supervisor, detailed Plaintiff's interactions with Ms. Hickman and the steps she

took in response to Ms. Hickman's complaints.  Ms. Smith also played a tape recording of her

interview with a former UMMC faculty member.  That faculty member testified specifically

about the elevator incident involving Plaintiff and Ms. Hickman.  The last witness Ms. Smith

called was Lacett Collins, who recounted one incident in which she said Plaintiff acted

inappropriately toward her.

On his own behalf, Plaintiff questioned or engaged in discussion with each of the

witnesses Ms. Smith called to testify before the committee.[2]  Moreover, Plaintiff himself

testified before the committee and offered the testimony of another faculty member who

observed one of the incidents about which Ms. Hickman testified.

Following the hearing, the committee reported to Defendant Dan Jones, UMMC's Vice

Chancellor for Health Affairs, that there was sufficient cause for Plaintiff's suspension and the

subsequent termination of his employment.  Dr. Jones concurred in the committee's conclusion.

The Board of Trustees of the Mississippi Institutions of Higher Learning then considered and

declined Plaintiff's request that it review UMMC's decision to terminate his employment.

Although Plaintiff would certainly have personal knowledge of these core facts, he has not

attempted to rebut them.

## II.    ANALYSIS OF 1983 CLAIM:

Plaintiff claims that he is entitled to recover from the Defendants under 42 U.S.C. § 1983

because the Defendants deprived him of his property interest in his employment without due

process.  Defendants have now moved for summary judgement claiming that they afforded

Plaintiff all the process he was due under the Fourteenth Amendment and that they enjoy

qualified immunity from Plaintiff's due process claim since they acted in an objectively

---

[2]The Court notes two possible exceptions to this statement.  First, because some portion of the transcript of the committee meeting is missing from the materials Defendants submitted, it is not clear whether Plaintiff questioned Ms. Smith following her testimony.  It is apparent, however, that he did engage in discussions or disagreements with her later in the hearing.  Second, the Court notes that Plaintiff had no opportunity to cross-examine the witness whose statement was presented to the committee by tape recording.  However, that witness's statement did not provide any new information to the committee, but merely corroborated a part of Ms. Hickman's testimony.

reasonable manner in light of clearly established law.  Plaintiff's response first urges the Court to deny Defendants' motion as premature so that additional discovery may take place.  Plaintiff thereafter addresses the qualified immunity defense.

> **A.      Plaintiff's Request for Further Discovery:**

The defense of qualified immunity shields public officials from "undue interference with their duties and from potentially disabling threats of liability."  *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S. Ct. 2727, 2732, 73 L. Ed. 2d 396 (1982) (quoted in *Byers v. City of Eunice*, 157 Fed. Appx. 680, 682, 2005 WL 3228114, *2 (5th Cir. Dec. 1, 2005)).  "Qualified immunity is immunity not only from damages but also from suit itself" and should be resolved as "early as possible."  *Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001).

In the present case, further discovery may be necessary with regard to Plaintiff's state-law claims, but it is neither necessary nor appropriate for the Section 1983 claim because the allegations in the First Amended Complaint ("Complaint"), averments in Plaintiff's response, and the documents relied upon by the parties establish the Defendants' right to qualified immunity.

> **B.      Plaintiff's Due Process Claim and Defendants' Qualified Immunity:**

Plaintiff asserts that Defendants Smith, Trussell, Files, Jones, and fictitious Defendants X, Y, and Z, acting under color of state law and in their individual capacities, denied Plaintiff's right to due process.  The parties' submissions on this point present two interrelated issues: (1) whether Plaintiff received the process he was due in connection with his termination; and (2) whether Defendants' actions were objectively reasonable in light of clearly established law.  An affirmative answer to the second question obviates the need to separately answer the first, but the analyses are intertwined.

The test for overcoming a claim of qualified immunity has been articulated in various ways.  As explained in *Tarver v. City of Edna,* 410 F.3d 745 (5th Cir. 2005):

> In performing our qualified immunity analysis, we must first determine whether [plaintiff] has alleged a violation of a constitutional right; if so, we turn to whether the officers' conduct was objectively reasonable in light of clearly established law at the time the challenged conduct occurred. The second prong of the analysis " 'is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law.' "

*Id.* 410 F.3d at 750 (citing *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), *Felton v. Polles,* 315 F.3d 470, 477 (5th Cir. 2002), *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir.1998)).

For a right to have been "clearly established" it is not enough that a "broad general proposition" be well established.  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).  Instead, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right."  *Anderson*, 483 U.S. at 639, 107 S. Ct. at 3038, 97 L. Ed. 2d 523 (1987); *Texas Faculty Ass'n v. Univ. of Texas at Dallas*, 946 F.2d 379, 389-90 (5th Cir. 1991).  "The standard is formulated at this level of generality in order to afford the measure of protection that the doctrine is intended to confer." *White v. Taylor*, 959 F.2d at 539, 544 (5th Cir. 1992) (citing *Anderson*, 483 U.S. at 639-40, 107 S. Ct. at 3039, 97 L. Ed. 2d 523; *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994)).  "If [officials] of reasonable competence could disagree as to whether the plaintiff's rights were violated, the [official's] qualified immunity remains in tact." *Tarver*, 410 F.3d at 750.  Finally, whether a defendant's conduct violated clearly established law is a legal question.

7

*Johnston*, 14 F.3d at 1059 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815, 86 L. Ed. 411 (1985)).

The right at issue here is the right to due process under the Fourteenth Amendment, which dictates that "a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493, 84 L. Ed. 2d 494 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 656, 94 L. Ed. 2d 865 (1950)).

In this case, Plaintiff first claims that Defendants deprived him of his due process right to a pretermination hearing.   In doing so, Plaintiff relies heavily on *Loudermill*.  However, that case demonstrates why Plaintiff received the process he was due when he attended two pretermination meetings during which he was allowed to respond to the charges against him.

*Loudermill* holds that while "some kind of hearing" is generally required before termination, some procedure less than a full evidentiary hearing is sufficient.  *Loudermill*, 470 U.S. at 545, 105 S. Ct. at 1495, 84 L. Ed. 2d 494.  The pretermination hearing provides "an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545-46, 105 S. Ct. at 1495, 84 L. Ed. 2d 494.  As the Court noted:

> The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id.* 470 U.S. at 546, 105 S.Ct. at 1495 (internal citations omitted).

The Supreme Court explained *Loudermill* in *Gilbert v. Homar*, 520 U.S. 924, 929, 117 S. Ct. 1807, 1811, 138 L. Ed. 2d 120 (1997), where a police officer was arrested and immediately suspended without hearing.  Relying on *Loudermill,* the court of appeals adopted a categorical rule that governmental employers may not deprive an employee of a property right unless preceded by some kind of pre-suspension hearing.  The United States Supreme Court rejected this position stating that in *Loudermill*, "we held that pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story." *Id.* at 929, 117 S. Ct. at 1811, 138 L. Ed. 2d 20 (balancing government interest in speedy removal against due process rights where adequate post-termination hearing is provided).

The formulation applied most commonly by the Fifth Circuit is that prior to termination, public employees with a property interest in their jobs must receive:  (1) notice of the reasons for their termination, and (2) effective opportunity to rebut those reasons.  *Perez v. Housing Auth. of the City of Uvalde*, 95 Fed. Appx. 51, 54-55, 2004 WL 790323 (5th Cir. April 14, 2004); *Gerhart v. Hayes*, 201 F.3d 646, 649 (5th Cir. 2000); *Russell v. Harrison*, 632 F. Supp. 1436, 1441 (N.D. Miss. 1986) (citing *Russell v. Harrison*, 736 F.2d 283, 289 (5th Cir. 1984)).

In this case, Plaintiff argues that he never received a pretermination hearing.  Not so. There appears to be no dispute that prior to his termination Plaintiff had two face-to-face meetings with Ms. Smith in which she explained the complaints about his conduct.  Moreover, during those meetings Plaintiff had an opportunity to rebut the charges against him.  In fact, the record shows that he agreed with most of the factual assertions about his conduct even if he disagreed that his conduct was improper.  Although informal, Plaintiff was given oral notice of the reasons for his termination and an opportunity to respond before he was terminated.  Plaintiff

received an adequate pretermination hearing under *Loudermill*. *See Browning v. City of Odessa, Tex.*, 990 F.2d 842, 844 (5th Cir. 1993); *Griffin v. Bennett,* 2006 WL 3203750, *2 (7th Cir. October 4, 2006) (employee received due process despite lack of written notice when told of charges at pretermination meeting with employer and given opportunity to respond); *Krentz v. Robertson*, 228 F.3d 897, 903 (8th Cir. 2000) ("informal meetings with supervisors are sufficient" process prior to termination with adequate post-termination hearings); *West v. Grand County,* 967 F.2d 362, 368 (10th Cir. 1992) ("pretermination warnings and an opportunity for a face-to-face meeting with supervisors" satisfied due process requirements); *Hawks v. City of Pontiac,* 874 F.2d 347 (6th Cir. 1989) (pretermination meeting with chief of police at which plaintiff presented evidence provided due process).[3]

Here, Plaintiff received a post-termination evidentiary hearing, and the Court finds that the pretermination meetings satisfied the *Loudermill* requirements. The pretermination actions of the individual Defendants violated no clearly established rights and were objectively reasonable.

Plaintiff also argues that he was denied an adequate post-termination hearing in three ways: (1) he received no notice of the charges and therefore could not rebut them; (2) he was not informed that anyone other than Ms. Hickman would testify as a witness against him; and (3) he was not provided an impartial panel. The Court notes that Plaintiff failed to cite any authority for these arguments and concludes that they are not well-founded.

---

[4]Plaintiff also argues that Defendants were required to suspended him with pay pending hearing. There is no such clearly established rule as demonstrated in *Gilbert*. 520 U.S. at 929-30, 117 S. Ct. at 1811-12, 138 L. Ed. 2d 120.

As an initial matter, Plaintiff clearly knew the subject of the hearing.  There is no dispute that Plaintiff twice met with Ms. Smith to discuss Ms. Hickman's allegations of harassment that led to Plaintiff's termination.  Plaintiff admits in his response that he was verbally told that the charges related to allegedly inappropriate conduct toward Ms. Hickman.  Plaintiff himself requested the post-termination hearing, and he admits that he was told Ms. Hickman (his accuser) would testify.  Plaintiff was on notice that his alleged conduct toward Ms. Hickman was in issue, and any doubt that he knew the charges against him is removed by the fact that he appeared at the hearing with a witness to rebut those same allegations.  To the extent Plaintiff can somehow claim that despite all of this he was unaware of the subject of the hearing, Dr. Files's letter providing Plaintiff notice of the hearing invited Plaintiff to call if he had any questions.  Plaintiff failed to avail himself of this offer.

As for the identity and number of witnesses, Plaintiff claims that he was surprised to see more than one witness against him at the post-termination hearing.  First, Plaintiff admits that he knew Ms. Hickman would testify.  Second, Dr. Files's letter referenced "employees" that might testify and offered to discuss the hearing with the Plaintiff.  Finally, failure to identify the witnesses does not violate a clearly established rule.  For example, in *Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679, 683 (5th Cir. 1986), the employer's internal post-termination hearing procedures required disclosure of witnesses together with a summary of those witnesses' testimony.  Contrary to that policy, the employer did not provide any of the required notice.  However, because the employee had an opportunity to confront and examine the witnesses at the hearing, he was afforded all of the process he was due.  Specifically, the court held:

> One who is present, who sees and hears the witnesses against him, has notice of who they are and what they maintain before he must meet them with his case; his confrontation rights are satisfied.  It is only when he was not present when they

11

were heard that such measures [*e.g.,* notice of the names of and summary of the testimony of witnesses] are called for.

*Id.* (citing *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150 (5th Cir. 1961)).

The evidence submitted by Defendants and not controverted by Plaintiff shows that he was present when each witness testified against him.  Because Plaintiff claimed to have been unclear about the nature of the conduct that led to his termination, the committee allowed him to hear all of the evidence against him before pleading his case before the committee.  The evidence likewise shows that, in consultation with his attorneys, he examined each of the witnesses and offered testimony to contradict what they said.

Finally, the Court rejects Plaintiff's claim that he was denied due process because he did not have a hearing before an impartial decision maker.  Specifically he says that because agents of UMMC, a party to the employment contract, had to decide Plaintiff's rights under the contract, he did not have the benefit of an impartial decision maker.  Plaintiff makes this assertion in the fact section of his opposition brief and offers no authority for the position.

It is undisputed that all of the members of the committee that reviewed Plaintiff's termination were faculty members or administrators at UMMC.  Neither party cited any cases directly on this point.  However, the rationale applied by both the Supreme Court and the Fifth Circuit leads to the conclusion that the composition of the committee in this case did not violate any clearly established rights.  In *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 1464, 42 L. Ed. 2d 712 (1975), the Supreme Court held that a state medical licensing board did not violate due process requirements when the same body that investigated a physician acted to suspend his license.  The Court acknowledged that there are "possibilities of bias that may lurk" in particular procedures put into practice. *Id.* at 54, 95 S. Ct. at 1468, 42 L. Ed. 2d 712.  However, it also

concluded that "[w]ithout a showing to the contrary, state administrators 'are assumed to be [people] of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'"  *Id.* at 55, 95 S. Ct. at 1468, 42 L. Ed. 2d 712 (quoting *U. S. v. Morgan*, 313 U.S. 409, 421, 61 S. Ct. 999, 1004, 85 L. Ed. 1429 (1941)).

Similarly, in *Myrick v. City of Dallas*, 810 F.2d 1382, 1384-85, 1387 (5th Cir. 1987), the Fifth Circuit held that a fired dispatcher/call screener received the process she was due when her termination was upheld by a panel made up of a member of the city council, a member of the city's civil service board, and a third member appointed by a member of the city council.  That court held that a plaintiff cannot rely upon bias inferred from the composition of the body, but must instead establish actual bias of the board members.  *Id.* at 1387.

Coming full circle, the question is whether the Defendants' handling of the post-termination hearing violated a "clearly established rule."  Plaintiff's inability to cite cases in support of any of his arguments regarding this hearing is telling, and in light of the cases cited above, the Court holds that Defendants did not violate any rule – clearly established or otherwise – which deprived Plaintiff of his right to due process.   The Court finds that Defendants' conduct, in all respects addressed by the parties, was objectively reasonable.  Therefore, the Court concludes that the Defendants enjoy qualified immunity from Plaintiff's Section 1983 claim, and that they are entitled to a judgment in their favor as a matter of law.[4]

---

[4]There appears to be no claim against UMMC under Section 1983.  To establish such a claim against a governmental entity, a plaintiff is required to plead and prove "the existence of a . . . policy that resulted in the deprivation of [his] rights."  *Torres v. County of Webb*, 150 Fed. Appx. 286, 291, 2005 WL 2367517, *3 (5th Cir. Sept. 27, 2005) (citing *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978)).  Moreover, "a plaintiff must demonstrate that a . . . 'policy' was the 'moving force' behind the constitutional violation."  *Foust*, 310 F.3d at 861(citing *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000)).  In this case, the Complaint hints at a Section 1983 claim against UMMC when it says that UMMC acted "under color of state law" and that Plaintiff sought a due process hearing "pursuant to the University procedure." (Complaint, ¶¶ 3, 6).  There is nothing more, however, to suggest any UMMC policy was the moving force behind the alleged Constitutional violation.  By contrast, the Complaint is clear when it avers that "Defendant [UMMC] is

**C.      Plaintiff's State Law Claims:**

Plaintiff raises certain issues with respect to his state law claims that are best decided by

the state court.  Having dismissed the only claim for which this Court had original jurisdiction,

the Court declines to exercise supplemental jurisdiction over the remaining claims.  Accordingly,

Plaintiff's state law claims for breach of contract and malicious interference are dismissed

without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**CONCLUSION**

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment

as to Plaintiff's claims under 42 U.S.C. § 1983 and dismisses Plaintiff's state law claims without

prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**SO ORDERED AND ADJUDGED** this the 7th day of December, 2006.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

liable to Plaintiff for breach of contract."  (Complaint, ¶2).  Moreover, Paragraph three of the Complaint pleads the Section 1983 claim and does so with reference to individual Defendants Smith, Trussell, Jones and Files.  Similarly, the Section 1983 portion of Plaintiff's response to the summary judgment motion limits its arguments to Defendants Smith, Jones, Trussell, Files, and fictitious Defendants X, Y, and Z. (Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment, pp.  14-15).  Nothing in Plaintiff's brief suggests that he intended to pursue a Section 1983 claim against UMMC, and there is no attempt to avoid summary judgment for UMMC on the Section 1983 claim.